**Veonna McCARRON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59190.**

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Oct. 22, 1980.

Edward R. Paynter, Abilene, for appellant.

Lynn Ingalsbe, Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for theft over $200.00. After finding appellant guilty, the jury assessed punishment at 3 years and a $2,000.00 fine. The jury recommended that the period of confinement be probated.

In her first ground of error, appellant challenges the sufficiency of the evidence to support the conviction. The court charged the jury on the law of circumstantial evidence.

John Bogart testified that he owned and operated Abtex Communications in Abilene. Abtex was a retail outlet for CB radios and various other types of communication equipment. From October of 1975 through May of 1977, appellant was employed by Bogart as the bookkeeper for Abtex.

As bookkeeper, appellant was responsible for making bank deposits and keeping a ledger which reflected the daily sales at Abtex. The ledger was maintained in such a manner that the daily sales were broken down by the type of payment the customer made; either cash, check or credit card.

Bogart testified that after appellant resigned from Abtex, he compared various bank deposit slips with the corresponding entry in the ledger. In making this comparison, Bogart discovered numerous shortages in the bank deposits. All of these shortages were in currency of an even dollar amount. In each instance in which he found a shortage, both the ledger entry and the bank deposit slip were in appellant's handwriting. Bogart stated that the first such shortage he discovered was dated October 26, 1976, and the last was dated May 24, 1977. In all, 41 such shortages were found which came to a total of $4,312.00.

As noted above, one of appellant's duties as bookkeeper was to make the bank deposits as well as filling out the bank deposit slips and ledger entries. On two occasions in January of 1977, Bogart offered to transport the deposits to the bank after appellant had finished filling out the deposit slips and gathering the money to be deposited. On both of these occasions, errors in the deposit slips were discovered by the bank in that the money bag contained more currency than the deposit slip filled out by appellant reflected.

In addition to her duties noted above, appellant was also responsible for maintaining the petty cash fund at Abtex. This fund was maintained in order to pay for various bills and charges Abtex incurred in its daily operations. Bogart explained that whenever money was taken out of the petty cash fund, an IOU or voucher would be placed in the box reflecting what amount of money was taken, by whom it was taken and when it was taken. Whenever the actual amount of currency in the fund became low, a petty cash draw check equal to the amount of vouchers or IOUs in the box would be cashed. The vouchers and IOUs would then be marked "paid" and the petty cash fund replenished. Bogart explained that even if someone neglected to place an IOU or voucher in the fund when money was removed, the money should still be accounted for in that a receipt for the purchase made or bill paid with such money would have been placed in the box. However, if neither a voucher, IOU or receipt

was placed in the box, the fund would run out of money in that there would be no basis upon which to replenish it.

Following her resignation, Bogart confronted appellant with the 41 shortages of cash he had found in going over the company's books. Appellant told Bogart that the money had been used to replenish the petty cash fund. Bogart testified that appellant's explanation did not comport with the amount of petty cash fund draw checks which had been cashed during the relevant period of time.

Bogart related that during the period of time appellant was employed, there was a total of seven full and part–time employees at Abtex. He stated that other than himself, only appellant and his wife were to have access to the petty cash fund; however, other employees could have secretly gotten to the fund. Apparently most if not all of the employees had access to the cash register at Abtex. Five of the employees had keys to the place of business.

Bogart stated that whenever one of the employees borrowed money from the business, it was generally taken from the cash register and an IOU was placed in the cash drawer. Bogart testified that the ledger entries made by appellant were based upon the actual amount of cash, checks and credit card receipts in the register at the end of a business day. Thus, if money had been taken from the register without placing an IOU in lieu thereof, this would not explain the discrepancy between the daily sales figure in the ledger and the corresponding bank deposit slip. By way of an example, Bogart stated that if an employee had taken all of the cash out of the register and not placed an IOU or voucher therein, appellant would have recorded $0.00 in the ledger as the amount of currency taken in that day by way of sales.

Bogart stated that on days when appellant was not present, someone else would clear the cash register and put the cash, checks and credit card receipts in a bag to be deposited at the bank the following day. On these occasions, appellant would make the ledger entries and bank deposits based upon what she found in the cash bag.

Nan Bogart testified that she was married to John Bogart and had worked at Abtex as a bookkeeper both before and after appellant was employed. Bogart related that after her husband discovered the cash shortages in the bank deposits, she went back over the company's records with regard to petty cash checks.

As noted above, a petty cash check was to replenish the petty cash fund and was to equal the amount of vouchers or IOUs in the petty cash box. Bogart related that in numerous instances, she found that the amount of petty cash checks made out and cashed by appellant, far exceeded the total amount of vouchers or IOUs the cash from the check was to replace. Bogart found that appellant had cashed petty cash checks with a value of $6,692.04 over the amount of petty cash vouchers and IOUs. She stated that she had no idea what happened to the excess cash received by appellant when these checks were cashed. Bogart further stated that if cash had been transferred from the cash register to the petty cash fund, such a transfer would have been recorded in the daily ledger.

Bob Todd testified that he was a certified public accountant. At Bogart's request, Todd had examined Abtex's books after the company started to go downhill. Todd stated that from his examination of the books, it appeared as though money was coming into the business which was never deposited in the bank. Although he could not state for certain without a full audit, Todd testified that he thought that a theft had occurred.

J. C. McCurdy, a certified public accountant, testified that without a full audit, it was impossible to tell what happened to the money in question. He stated that the money could have been unaccounted for rather than missing.

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. *Schershel v. State*, Tex.

Cr.App., 575 S.W.2d 548; *Bryant v. State*, Tex.Cr.App., 574 S.W.2d 109. Thus, proof which amounts only to a strong suspicion or mere probability is insufficient. *Ford v. State*, Tex.Cr.App., 571 S.W.2d 924. However, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State*, Tex.Cr.App., 575 S.W.2d 551. Lastly, the rules of circumstantial evidence do not require that circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Sullivan v. State*, Tex.Cr.App., 564 S.W.2d 698.

In support of her contention that the evidence is insufficient, appellant contends that any of the employees of Abtex could have been responsible for the missing money. She relies on *Fraser v. State*, 141 Tex. Cr.R. 152, 147 S.W.2d 780. In that case, the defendant was convicted of embezzling money from a corporation. The defendant was in charge of a petty cash box and responsible for paying various bills. The circumstantial evidence was found insufficient to support the conviction for taking $68.09 from the box after it was noted that four or five employees had equal access to the petty cash box. The other employees did not testify at Fraser's trial.

■ We find the instant case to be distinguishable from *Fraser*. Viewed in the light most favorable to the verdict, the evidence shows that in each instance in which a cash shortage was detected, both the ledger entry and deposit slip were in appellant's handwriting. Theft from the cash register by another employee would not have accounted for these discrepancies because the ledger entries made out by appellant were based upon the amount of money actually in the register. Likewise, appellant's explanation to Bogart that the money had been transferred to the petty cash fund was

shown not to have been plausible. Such a transfer would have been recorded in the ledger by appellant, which it was not. Moreover, any cash transferred from the register would have been replaced by a petty cash fund draw check. We find the evidence sufficient to exclude every reasonable hypothesis except that for appellant's guilt. Appellant's first ground of error is overruled.

In her second ground of error, appellant contends that the trial court erred in admitting evidence of numerous extraneous offenses. The court charged the jury that such offenses were to be considered only on the issue of appellant's intent in connection with the alleged offense.

The indictment charged appellant with theft over $200.00 on February 18, 1977. Evidence at trial revealed a cash shortage of $350.00 between the ledger entry and bank deposit on that day. The extraneous offenses of which appellant complains are the forty other instances of such shortages which totaled almost $4,000.00. She also complains of the admission of evidence concerning her actions in cashing draw checks for the petty cash fund exceeding the vouchers by $6,692.04.

Initially, we reject appellant's contention that such evidence was inadmissible by virtue of V.T.C.A. Penal Code, Sec. 31.03(c)(1), which provides:

"evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;"

■ It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Hines v. State*, Tex.Cr.App., 571 S.W.2d 322. One of the exceptions to this rule is that an extraneous offense is admissible to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself. *Albrecht v. State*, Tex.Cr.App., 486 S.W.2d 97.

In *Christiansen v. State*, Tex.Cr.App., 575 S.W.2d 42, the defendant was convicted of theft. The evidence showed that he exchanged a worthless check for four money orders. This Court found no error in the trial court admitting evidence which showed that the defendant had presented 72 other worthless checks in that such evidence was admissible on the issue of intent. Likewise, in *Mulchahey v. State*, Tex.Cr. App., 574 S.W.2d 112, extraneous theft offenses similar to that alleged in the indictment were found to be admissible. It was held that in a circumstantial evidence case, the State was entitled to introduce this testimony in its case in chief as evidence of appellant's intent and motive to commit theft.

■ We find that the trial court did not err in admitting evidence of the numerous extraneous offenses of which appellant complains. Such evidence was admissible on the issue of appellant's intent. Appellant's second ground of error is overruled.

In her fourth and fifth grounds of error, appellant contends that the trial court erred in not allowing her to present testimony from two witnesses. She maintains that such evidence would have shown that others may have committed the offense with which she was charged and that John Bogart was an accomplice witness.

Appellant called W. B. Holden as a witness. Holden testified that on May 5, 1977, he went to Abtex and bought several items of communications equipment from John Bogart. Two of the items purchased were a radio with a retail value of $369.00 and a microphone with a retail value of $49.00. Holden related that he made a "deal" with Bogart whereby the radio and microphone were purchased for $300.00 cash. These items did not appear on the sales ticket and there was no sales tax charged. Bogart put the $300.00 in his wallet.

Following the State's objection to Holden's testimony, the trial court instructed the jury not to consider the testimony for any purpose.

Bobby Jones was with Holden at the time he went to Abtex. Out of the presence of the jury, Jones testified to substantially the same facts as related by Holden. The trial court refused to allow this evidence to go before the jury.

■ A trial court does not err in excluding proffered evidence that is not inconsistent with a defendant's guilt. *Florio v. State*, Tex.Cr.App., 532 S.W.2d 614. In *Florio*, no error was found in the trial court excluding evidence that 19 days prior to the offense in question, someone other than the defendant attempted to gain entrance to an apartment in the same manner in which the defendant was charged with entering the prosecutrix's apartment in the case at bar. Likewise, in *Loy v. State*, Tex.Cr.App., 502 S.W.2d 123, there was no error in the trial court not letting the defendant prove that her husband had been convicted for possessing heroin on an occasion almost one month before the time she was charged with possessing heroin. It was noted that such evidence would not have been inconsistent with the defendant's guilt. Also, see, *Dickson v. State*, Tex.Cr.App., 492 S.W.2d 267; *Fleck v. State*, Tex.Cr.App., 380 S.W.2d 621.

■ The excluded evidence in the instant case concerned a transaction involving Bogart which occurred almost three months after the date of the instant offense. As noted above, a failure to ring up sales on the cash register or place money in the cash register would not have accounted for the discrepancies between the ledger entries and deposit slips. We conclude that the excluded evidence was not inconsistent with appellant's guilt as established at trial. No error is shown in the trial court excluding the testimony of Holden and Jones.

In her sixth ground of error, appellant contends that the trial court erred in overruling her objection to a comment on her failure to testify. The complained of comment occurred during cross-examination of McCurdy by the prosecutor. After showing the witness a check made out by appellant which contained the notation "draw," the following occurred:

"Q. It says draw, but it doesn't necessarily mean that, does it?

"A. I don't know. The evidence we have go it [sic] says 'draw.'

"Q. Okay. Well, you just have to accept it at face value unless you talk to the person who wrote it, isn't that right?

"MR. PAYNTER: Your Honor. I am going to object to the comment of the district attorney on the lack of testimony on the behalf of the defendant.

"THE COURT: I will overrule the objection."

At the time the complained of comment occurred, the State had not closed its case and appellant had not rested her case.

We have previously held that a comment such as that in the instant case cannot be held to refer to a failure to testify which has not yet occurred. See *Jackson v. State*, Tex.Cr.App., 501 S.W.2d 660; *Terry v. State*, Tex.Cr.App., 489 S.W.2d 879. Thus, in *Garcia v. State*, Tex.Cr.App., 513 S.W.2d 559, the following question during cross–examination of an alibi witness was not found to be improper:

"Well, if he was asleep, of course, Robert Garcia (the defendant) knows better than anybody else in the world whether he was asleep or not?"

In finding the overruling of the defendant's objection to be proper, it was noted that the defendant had not rested his case, that the statement made no allusion to his failure to testify and that the question did no more than indicate that the defendant knew whether he was asleep at the time of the burglary. *Garcia v. State*, supra at 562.

In the instant case, the prosecutor had no way of knowing whether appellant would testify at the time the complained of question was asked. The question did not refer to her failure to testify, but rather, indicated that she knew whether the check in question was really for a "draw." No error is shown in the trial court overruling appellant's objection to the complained of question.

In her third ground of error, appellant contends that the trial court erred in refusing to submit her specially requested charge on exculpatory statements. She maintains that she was entitled to such a charge based upon testimony John Bogart gave concerning the confrontation he had with her upon discovering the numerous cash shortages. That testimony is as follows:

"MR. INGALSBE: Q. What exactly did she say?

"THE WITNESS: A. Okay. I asked her about it. Let's see, if I can remember exactly. She told me that she was taking the money out of the deposits and putting it back into the petty cash fund, because we were in such bad condition that she could not cash a petty cash check at that time, to put money in the petty cash fund."

In *Simon v. State*, Tex.Cr.App., 488 S.W.2d 439, it was held that a charge concerning exculpatory statements is required only when an accused's statement amounts to an admission with an assertion that would exculpate him. See *Moulton v. State*, Tex.Cr.App., 508 S.W.2d 833; *Jordan v. State*, Tex.Cr.App., 506 S.W.2d 217.

We cannot agree that the statement in question meets the first prong of the rule in *Simon*. Appellant's statement was no more than an admission to the transfer of funds from one source to another within Abtex. This alleged transfer would not fall within the meaning of "deprive" as used in our theft statute.[1] We find that appellant's statement did not constitute an admission, therefore, no error is shown in the trial court refusing to submit her specially requested charge on exculpatory statements.

The judgment is affirmed.

---

1. V.T.C.A. Penal Code, Sec. 31.01(3) provides:
" 'Deprive' means:
"(A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

"(B) to restore property only upon payment of reward or other compensation; or
"(C) to dispose of property in a manner that makes recovery of the property by the owner unlikely."