

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00078-CR

_____


BRANDON CODY KIHEGA, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 11F0408-102


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# O P I N I O N

Charged with capital murder and found guilty by a Bowie County jury, Brandon Cody Kihega has filed an appeal with this Court. Kihega urges the unusual position that when the trial court ruled four of the State's witnesses were qualified as experts, such rulings amount to a comment by the court on the weight of the evidence. He also maintains on appeal that the trial court erred in denying his requested "benefit of the doubt" instruction to the jury pertaining to potential lesser-included offenses and asserts that a question asked a witness by the State constituted an impermissible comment on Kihega's failure to testify. We overrule the points of error and affirm the trial court's judgment and sentence.

## Late Night Murder

While Kihega does not challenge the sufficiency of the evidence, a summary of the facts of the case will provide context for much of our analysis; consideration of the entire state of the evidence will be necessary for our discussion of the jury charge. On the night of February 23, 2011, Kihega, his brother, Justin Childs, and several other men gathered at the shop behind the house of the victim and Kihega's friend, Billy Stone. The men drank alcoholic beverages (and perhaps some smoked marihuana) as they entertained themselves talking about motorcycles[1] and guns. Kihega apparently wanted the entertainment to include a fight involving Childs and another person because Kihega is reported to have said the following about Childs: "[J]ust sic him on anyone, I want to see a fight."

---

[1]There was testimony that at least one of the witnesses who was at Stone's that night was very involved in a motorcycle club to which Stone either belonged or was about to join; and that Stone worked on motorcycles.

2

Not surprisingly, in a gathering of young men fueled by alcohol and a discussion of somewhat macho adult toys such as motorcycles and firearms, there apparently was some huffing and boasting or showing off. Stone's former spouse, Melissa Stone (Melissa), described Stone as having a propensity to exaggerate, saying that he was a "story teller" prone to telling "tall tales." At the party on February 23, Stone told Kihega to go into the house and fetch a specific box of cereal or a sack (testimony differed), and when Kihega returned with it, Stone withdrew a stash of cash. The cash was bundled in bank straps, or wrappers of the kind used by banks, and Stone claimed to total $200,000.00.[2] In his post-arrest statement, Kihega said the money retrieved after killing Stone had only been stacks of single dollar bills, with hundred dollar bills on the top and bottom of the stacks, wrapped in bank straps; Kihega's description of the amount of cash varied from $1,200.00 to $3,700.00. Melissa also said that about two weeks before Stone's death, he had borrowed about $2,000.00 from an aunt. Two of the men at the drinking party that night described the exchange between Childs and Kihega as being a "bragging contest" and a "pissing contest."

Eventually, most of the men left, leaving only Stone, Kihega, and Childs. Kihega gave two statements to police that were video recorded in which he said the three men sat around Stone's dining table, drinking whiskey and "play[ing]" with Stone's .44 Desert Eagle pistol. In his initial statement, Kihega said he was holding the pistol and it accidentally discharged, shooting Stone in the face. Kilhega maintained that this so startled him that the gun he held

---

[2]Melissa said she knew of Stone putting hundred dollar bills on top of stacks of single dollar bills and wrapping them to appear to be stacks of hundreds; from Kihega's statements, it appears the money taken the night of the murder was similarly packaged.

accidentally discharged a second time. In this version of events, Kihega said one shot was to Stone's face and one to his side, beneath his arm (Stone's body, though, only showed two bullet entrances, one to his face and one to the side of his head, over his ear.). A second scenario was later described by Kihega. In this later and alternate rendition, Kihega said that Stone had allowed him to hold and "play" with the pistol; in this second story, Kihega said he contemplated, for as long as forty-five minutes, whether to shoot Stone and that he ultimately decided to shoot Stone twice.

Two witnesses (investigating officer Robby McCarver and forensic expert John Beene) each debunked Kihega's story about the accidental discharge of the pistol, saying that such an accidental discharge was virtually impossible. Further, while Kihega suggested that his shots may have been accidental, that story was contradicted by the medical examiner, who said that the bullet wound to the head (above the right ear) evinced a small amount of soot around the entrance wound and that it had several "marginal lacerations." Both of these things were characteristic of marks that would result when a gun was fired with the gun's muzzle being in contact with or while being held extremely close to the eventual entrance spot. This head wound injury was contrasted with the other, which was characterized by a more distinct round entrance wound having no evidence of soot or stippling around the wound site. Such facts suggested the gunshot injury to the face was inflicted by the gun when it was held a greater distance from the victim than the gunshot causing the wound to the head.

Law enforcement investigators recovered several shell casings from Stone's home, all of which had contained bullets fired from the Desert Eagle pistol. One shell casing with the same

4

head stamp (indicating the caliber and manufacturer of the shell) as the shell casings from the murder scene was found in Kihega's bedroom.[3]  Another witness, Scott Neff, testified that a few days after the killing, Kihega contacted him and offered to sell him a Desert Eagle pistol.  In order to demonstrate the pistol's effectiveness, Kihega fired it at some street signs.  Neff said he reported this incident to law enforcement and told them where the shooting demonstration occurred.  Later, at that location, Investigator Jerl Palmore said he found street signs with bullet holes and a shell casing bearing the same head stamp as those found at the murder scene (and thus, by extension, on the casing found in Kihega's bedroom).[4]

In Kihega's bedroom, police investigators also found a pair of Kihega's blue jeans, which appeared to have blood on them.  Holly Cherain, a forensic scientist in the serology section of the Texas Department of Public Safety (DPS) crime laboratory, testified that she performed a "presumptive test for the presence of blood" and that the tests she conducted indicated "positive possible blood stains on the jeans."  After obtaining that positive presumptive result, Cherain preserved the stained sections of the jeans in a freezer so the laboratory's DNA section could do

---

[3] There is a strong indication that the shell casing found in Kihega's room was also fired from the murder weapon.  Among the shell casings firearm expert Beene was able to say conclusively were fired from the Desert Eagle was an item labeled "BC-11."  Investigator McCarver testified he identified the shell casing from Kihega's room by placing it in packaging material and labeling that package with a "CCN number" "B as in boy, 11 dash 0586, which is specific to this case."  This shell casing was offered into evidence as State's Exhibit 95.  This Court was provided a digital copy of the exhibits and record; what appears to be State's Exhibit 95 is a digital photograph on an envelope that is marked "BC-11," which corresponds with Beene's forensics report but does not correspond precisely with McCarver's testimony.  However, there are markings on the exhibit envelope, including the evidence sticker, which are blurred and illegible.  From the context of McCarver's and Beene's testimony, it appears this casing was tested and identified as having been fired from the Desert Eagle pistol.

[4] There was no testimony that any of the casings found by Palmore were sent to the crime laboratory for testing.  However, Beene's report states that most of the casings and fragments were submitted on March 6, 2011, by Investigator Alton White.  A single cartridge case was submitted on March 17, 2011, by the "Bowie County Sheriff's Office."  That casing was one of the several Beene said had been fired from the Desert Eagle pistol.

further testing. On cross-examination, Cherain acknowledged that this presumptive test did not conclusively establish the substance on the jeans to be blood. DPS crime laboratory forensic scientist Amber Moss testified that she tested the stain on the jeans and found DNA from Kihega, Stone, and a third, unknown person. Moss acknowledged that she could not conclusively testify that the stain was blood and further agreed that the DNA she obtained from that stain sample could have come from other sources, such as saliva or skin cells.

**Expert Witnesses**

The State qualified four expert witnesses at trial: Dr. Reade Quinton as a medical examiner and pathologist; Cherian as a serologist; Moss as a forensic scientist capable of making a DNA analysis; and Beene as a firearms specialist. After each witness testified to his or her qualifications, education, and credentials, the State offered the respective witnesses as experts in their fields of expertise. When Dr. Quinton was offered as an expert, the trial court stated that the witness would "be so recognized." Then, Kihega's attorney announced that he had an objection and asked to approach the bench. The reporter's record states the next part of the proceeding occurred "(AT THE BENCH, ON THE RECORD)."[5] Kihega's attorney objected that the expressed determination by the trial court, in the presence of the jury, that the witness was an expert would amount to an improper comment on the weight of the evidence. In the same fashion, Kihega objected when each of the other three witnesses were qualified as experts. In doing so, Kihega informed the trial court he would object, and the objections and trial court rulings all occurred after the reporter's record indicated, in each of the four occasions Kihega's

---

[5]The reporter's record does not state the matter was actually outside the hearing of the jury.

objections were articulated "(AT THE BENCH, ON THE RECORD)" and after being overruled, the record indicates proceedings continued in "(OPEN COURT, DEFENDANT AND JURY PRESENT)." We point this out only because Kihega's points of error complain that the trial court impermissibly commented on the weight of the evidence when the court ruled "in the presence of the jury" that each of the proffered witnesses were experts. Strictly speaking, Quinton was the only one of the four witnesses whose status as an expert was ruled on by the trial court in the presence of the jury.

In support of his claims of reversible error, Kihega directs us to *United States v. Johnson*, 488 F.3d 690, 697–99 (6th Cir. 2007). "Except in ruling on an objection, the court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so." *Id.* at 697–98. Federal circuit court opinions may be persuasive authority, but they are not binding authority on Texas courts. *Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002); *Reynolds v. State*, 4 S.W.3d 13, 20 n.17 (Tex. Crim. App. 1999). Kihega cites no controlling Texas authority that a trial court improperly comments on the weight of the evidence by recognizing a witness as an expert in his or her field.[6]

That is not to say that Kihega has not raised an interesting point. "Expert witnesses can have an extremely prejudicial impact on the jury, in part because of the way in which the jury

---

[6]Even if *Johnson* were controlling, we question whether it would be authority for Kihega's argument. Johnson complained that the trial court erred in allowing a police officer to offer expert testimony about drug trafficking. Before affirming the trial court's ruling, which was not objected to at trial, the appellate court "pause[d] to comment on the procedure used by the trial judge in declaring before the jury that Officer Dews was to be considered an expert." *Johnson*, 488 F.3d at 697. The language relied on by Kihega, criticizing the explicit recognition of proffered witnesses as experts, appears to be dicta, not central to the court's reasoning and, thus, not authoritative. *See Ford v. State*, 334 S.W.3d 230, 234 (Tex. Crim. App. 2011).

perceives a witness labeled as an expert. 'To the jury an 'expert' is just an unbridled authority figure, and as such he or she is more believable'" *E.I. du Pont Nemours & Co. v. C.R. Robinson*, 923 S.W.2d 549, 553 (Tex. 1995) (quoting Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Civil and Criminal Jury Trials*, 154 F.R.D. 537, 540 (1994)). However, the *Robinson* court neither laid out rules for judicial recognition of witnesses as expert *vel non*, nor stated that trial courts should not acknowledge experts as such. While discussing the dangers of dueling and hired experts, the opinion itself focused on the need for expert evidence proffered under Rule 702 of the Texas Rules of Evidence to have three qualities: the testifying expert must be qualified, his or her testimony must be relevant to the issues at hand, and the testimony must be based on a "reliable foundation." *Robinson*, 923 S.W.2d at 556; *see* TEX. R. EVID. 702. Therefore, we do not find *Robinson* to constitute authority for Kihega's argument.

Kihega's statutory authority is Article 38.05 of the Texas Code of Criminal Procedure:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates any disbelief in the defense's position, or diminishes the credibility of the defense's approach to its case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.). Based on the trial court's only statements at issue, wherein it "recognized" Dr. Quinton as an

8

expert and then overruled Kihega's objections to witnesses Cherian, Moss, and Beene, we find nothing in the record suggesting that the trial court implied approval of the State's argument, indicated disbelief in the defense's position, or diminished the credibility of the defense's approach to its case. We overrule the first four points of error.

## Failure to Include Benefit of the Doubt Instruction in Charge

Kihega next complains that the trial court refused to include a "benefit of the doubt" instruction in the jury charge. "Where an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would be error ordinarily in such case to refuse such a charge when requested." *McCall v. State*, 14 Tex. Ct. App. 353, 363 (1883), *cited with approval*, *Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009). Although we determine that the trial court erred in denying the requested instruction, we find no harm that befell Kihega as a result of that error.

Where jury charge error is alleged, we first determine whether error exists in the charge; if there was error, we then determine whether sufficient harm resulted from that error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Where the defendant properly objects to the charge, any error requires reversal if the appellant suffered some harm as a result of the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The harm caused by the error must be considered "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. at 171; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). Appellant must have

suffered actual harm, not merely theoretical harm. *See Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Where the defendant fails to properly object, reversal is warranted only where the appellant suffered harm so egregious as to have been denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 171.

Kihega requested that the jury charge include an instruction on the "benefit of the doubt," saying,

> [T]he jury should be instructed that they should convict him of the lesser of the two lesser included offenses. So we would object and request the Court include a paragraph that says, if you find from the evidence beyond a reasonable doubt that the defendant's guilty of capital murder on the one hand or of felony murder on the other hand, but you have a reasonable doubt as to which offense he is guilty, then you must find the defendant guilty of the lesser offense of felony murder.[7]

The trial court overruled Kihega's requests. The charge given the jury did authorize convictions on the lesser-included offenses of murder, manslaughter, and criminally negligent homicide. In each application paragraph, the trial court's charge instructed the jury to convict Kihega of the particular offense if the jury found the respective elements to have been proved beyond a reasonable doubt. It went on to instruct that if the jury had a reasonable doubt as to each particular offense, the charge instructed the fact-finder to acquit Kihega and next consider whether he was guilty of the next lesser offense. When Kihega presented his request for the "benefit of the doubt" instruction, the trial court opined that it found Kihega's proposed

---

[7]This was Kihega's oral request to the trial court. Kihega also presented his charge requests in writing; he proposed charges instructing the jury that if they found Kihega "guilty of felony murder on the one hand, or of manslaughter on the other hand," but had reasonable doubt as to which offense he was guilty, the jury must find him guity of the lesser offense of manslaughter. Likewise, he requested that if the jury found Kihega "guilty of capital murder on the one hand, or of felony murder on the other hand," but had a reasonable doubt as to which crime, they must find him guilty of the lesser offense; and if they found him guilty of "manslaughter on the one hand, or of criminally negligent homicide on the other hand," but had a reasonable doubt as to which crime he was guilty, they must find him guilty of the lesser crime.

instruction "more confusing than it is helpful," and said he was "disturb[ed]" by the "part about, on the other hand, or of felony murder, then it says, on the other hand." The trial court said it found the charge language proposed by the State to be "much clearer" than Kihega's suggestions, which the court believed would "confuse" the jury.

As cited above, a trial court errs to refuse such a requested instruction. *McCall*, 14 Tex. Ct. App. at 363; *see also Sparks v. State*, 300 S.W. 938, 939 (Tex. Crim. App. 1927); *Bussell v. State*, 265 S.W. 164, 1165 (Tex. Crim. App. 1924). Because Kihega properly objected to the charge as given, we must reverse the trial court's judgment if it can be shown that Kihega suffered any actual harm. The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). It is not the burden of the defendant to point out resulting harm and our determination is simply made from a review of the record. *Ngo*, 175 S.W.3d 738; *see Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008). We will take into account the entire jury charge, the state of the evidence, argument of counsel, and any other relevant information revealed by the record in its entirety. *Abdnor*, 871 S.W.2d at 733.

The jury charge instructed the jury to find Kihega guilty of capital murder only if the jury unanimously found, beyond a reasonable doubt, that he was guilty of that crime. If the jury failed to unanimously make that finding beyond a reasonable doubt, or if the jury harbored such a reasonable doubt as to his guilt, it was instructed to find Kihega not guilty of capital murder and to then consider whether he was guilty of the lesser offense of murder. Similarly, the jury was only authorized to find Kihega guilty of murder if they unanimously found, beyond a

11

reasonable doubt, him to be guilty of that offense. Should they have a reasonable doubt, the jury was told to find Kihega not guilty of murder and then consider whether he was guilty of the lesser offense of manslaughter. Identical instructions guided the jury in deciding whether the defendant could be found guilty of manslaughter, and if a reasonable doubt was present, the fact-finders were to proceed to consider the lesser offense of criminally negligent homicide. The jury charge gave explicit requirements for findings of guilt and directed the jury to consider lesser-included offenses if the greater offenses were not proven.

The evidence strongly supported a finding of guilt on the charge of capital murder. Several witnesses testified that Kihega and Childs were present at the party at Stone's house the night Stone was killed, that Kihega and Childs were the last two guests remaining with Stone after the others had departed, and that Kihega and Childs believed there was a significant amount of cash at the premises. A substance was found a few days after the murder on Kihega's pants which presumptively tested positive as the victim's blood. A few days after the killing, Kihega was in possession of the pistol that fired shells similar to those found at that scene, as well as one similar shell casing found in Kihega's bedroom. Kihega was attempting to sell the pistol shortly after the murder. Kihega participated in two video recorded statements wherein he acknowledged shooting Stone twice (although his account of the shooting differed from one telling to the other).

The State briefly mentioned the lesser-included offenses in its closing argument:

Guys, when we look at those lesser includeds, they're in there, they are, for legal reasons, but you don't consider a lesser included offense unless you find him not guilty of capital murder. Given what you have heard, given these statements,

12

> there is no way the individual is guilty of anything less than capital murder, of anything less.

That the jury would not consider the lesser offenses unless first concluding that Kihega was not guilty of the primary offense of capital murder is a correct statement of the law. The State then continued to argue that the evidence pointed to affirmative findings on all of the requisite elements of capital murder.

Two sister courts have addressed similar situations (i.e., where the requested "benefit of the doubt" instructions were not given). In *Shelby v. State*, 724 S.W.2d 138 (Tex. App.—Dallas 1987) (op. on reh'g), *vacated on other grounds*, 761 S.W.2d 5 (Tex. Crim. App. 1988), the reviewing court observed that the charge given the jury made clear that the defendant could only be found guilty of murder if the jury had no reasonable doubt as to his guilt. Although the trial court failed to give the requested instruction on benefit of the doubt, the charge given "le[ft] no uncertainty as to how to resolve the doubt or where the burden of proof lies on that issue" if the jury were in doubt as to whether Shelby was guilty of murder or aggravated assault. *Id.* at 140. "When the charge given by the court adequately presents the defense proposed by a requested instruction, the accused is not harmed." *Thomas v. State*, 578 S.W.2d 691, 698 (Tex. Crim. App. 1979) (trial court's instructions on availability of self defense sufficiently presented defensive theory proposed by defendant's requested instruction).

In *Benavides v. State*, 763 S.W.2d 587 (Tex. App.—Corpus Christi 1988, pet. ref'd), the trial court also denied the defendant's request for a benefit of the doubt instruction. Noting that the given charge "clearly instruct[ed] the jury that, if it is not convinced beyond a reasonable doubt that appellant is guilty of aggravated robbery, it should acquit him of the greater offense

13

before considering appellant's guilt on the lesser offense," the Corpus Christi Court found that no further benefit of the doubt instruction was necessary. *Id.* at 589. "Any reasonable doubt about whether the appellant is guilty of the lesser or greater offense thus results in an acquittal of the greater offense before the jury even considers the lesser offense." *Id.*

Here, the trial court's instructions to the jury clearly required a finding of guilt beyond a reasonable doubt on the charged offense of capital murder. It went on to instruct the jury that if it harbored any such doubt, it was instructed to acquit Kihega and then consider the lesser offense of murder. Likewise, the jury was authorized to find Kihega guilty of murder only if it found him guilty of that offense beyond a reasonable doubt: in the face of such degree of doubt, the jury was plainly told to find him not guilty and proceed to consider manslaughter. The same instructions were provided to authorize an acquittal for manslaughter and to consider the offense of criminally negligent homicide. In other words, the instructions adequately instructed the downward ladder of instructions for the lesser-included offenses.

Thus, the charge provided for consideration of alternative lesser crimes and authorized consideration and conviction on one of those lesser offenses if the jury had reasonable doubt as to the primary charged offense (as well as each subsequent lesser-included offense). As summarized above, the evidence establishing Kihega's guilt for the slaying of Stone while in the course of robbing him was very strong. The State did not spend a great deal of time addressing the lesser-included offense in its closing argument, and when it did so, it did it in the context of directing the jury toward the evidence to establish guilt of capital murder. Considering the entire charge, the state of the evidence, and the State's arguments, we do not find that Kihega was

14

harmed by the denial of his request for a benefit of the doubt instruction. Therefore, we overrule the fifth point of error.

**No Comment on Failure to Testify**

Finally, Kihega complains of a question posed by the State to Melissa, the victim's former wife. The Stated asked, "Ma'am, at any time have you heard from the defendant in this case, Brandon Kihega? I mean, since Billy's death?" Melissa answered, "No." After Kihega objected to the question, the State withdrew it. Kihega then argued at the bench that the question had been a comment on his right to remain silent. The trial court overruled the objection.

A comment on a defendant's failure to testify violates both the Federal and state Constitutions as well as Texas statutory law. U.S. CONST. amend. V; *see Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt[.]"); TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005). The defendant has a separate Fifth Amendment privilege not to testify at either the guilt or punishment phases of trial. *Randolph v. State*, 353 S.W.3d 887 (Tex. Crim. App. 2011).

Kihega cites several cases for the proposition that reference by the State to a failure of the defendant to express remorse constitutes an improper comment on the defendant's failure to testify, but all of these cases address statements by prosecutors in closing arguments.[8] In turn,

---

[8]*I.e., Swallow v. State*, 829 S.W.2d 223 (Tex. Crim. App. 1992), *overruled in part*, *Randolph*, 353 S.W.3d at 895; *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex. Crim. App. 1984); *Cooper v. State*, 959 S.W.2d 682, 686 (Tex. App.—Austin 1997, pet. ref'd); *Escort v. State*, 713 S.W.2d 733, 738 (Tex. App.—Corpus Christi 1986, no pet.).

15

the State directs us to *McCarron v. State*, 605 S.W.2d 589, 595 (Tex. Crim. App. 1980) (citing *Garcia v. State*, 513 S.W.2d 559, 562 (Tex. Crim. App. 1974)). The *McCarron* court addressed situations where the State posed questions to witnesses during the case-in-chief, which questions elicited objections on the basis that the questions commented on the defendant's failure to testify. The Texas Court of Criminal Appeals pointed out that in the situation in *McCarron*, because the defendant had not closed its case, "the prosecutor had no way of knowing whether appellant would testify at the time the complained of question was asked." *Id.* It reasoned that because the prosecutor had no way of knowing whether the defendant would testify, the prosecutor's question did not comment on the defendant's failure to testify; rather, it inquired about the testifying witness' knowledge of the reason a check was issued.[9]

That same court later held that "*McCarron* did not create a *per se* rule that a comment made before the close of a defendant's case can never be a comment on the failure to testify." *Bustamante v. State*, 48 S.W.3d 761, 766 (Tex. Crim. App. 2001). Rather, the timing of the comment was a factor to be considered in the analysis of whether the comment made reference to the defendant's failure to testify. *Id.* Here, we do not find the prosecutor's question was a comment on Kihega's failure to testify. As in *McCarron*, presentation of evidence in this case had not been concluded; as a result, the State could not then know whether Kihega would testify. The withdrawn question concerned contact between the witness and Kihega, not Kihega's lack of

---

[9]In McCarron's theft trial, there was cross-examination by the State of an accountant regarding a check written by McCarron which bore the notation "draw." The prosecutor's question to the witness was, "It says draw, but it doesn't necessarily mean that, does it?" *McCarron*, 605 S.W.2d at 594. The witness said he did not know, to which the prosecutor rejoined, "Okay. Well, you just have to accept it at face value unless you talk to the right person who wrote it, isn't that right?" *Id.* at 595. This elicited an objection from McCarron that the prosecutor had commented "on the lack of testimony on the behalf of the defendant." *Id.*

16

testimony at trial. The question seems hardly relevant to any issue for the jury to decide; even if it had more relevance, one would think that if it had any probative value, the probative value would likely have been substantially outweighed by the danger of unfair prejudice or confusion. *See* TEX. R. EVID. 401, 403. Despite its lack of relevance and even though it was apparently improper, that does not mean the question was a comment on the failure of Kihega to testify. We overrule Kihega's sixth point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 27, 2012
Date Decided:       January 11, 2013

Publish

17