

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00155-CR

_____

MAURINE FOSTER PARKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 15-0197X

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

After a Harrison County jury found Maurine Foster Parker guilty of aggravated assault with a deadly weapon, she was sentenced to ten years' confinement in prison. On appeal, Parker contends the trial court erred when it failed to instruct the jury properly on the law of self-defense. Because (1) the trial court did not err in failing to include an instruction on a presumption of reasonable conduct and (2) Parker did not suffer actual harm as a result of any error in the jury instructions, we affirm the trial court's judgment.

I.      **Background**

On May 6, 2015, Vernon James was at a local park when he noticed Parker sitting in the driver's seat of a white car on the same street. James said Parker followed him to the steps into the park, where she told him she could kill him "right [then] if [she] want[ed] to." After Parker threatened James, the two began arguing and "cussing each other out." According to James, Parker blamed him for the death of her sister, Hester. James said that about two or three weeks after Hester's death, Parker threatened to kill him every time she saw him, which he said was at least twenty times. After their brief confrontation, Parker got back in her vehicle and left the area. James remained in the park, sitting on a park bench.

Roughly five minutes later, Parker returned to the park with her brother, James Foster. Before returning to the park, however, Parker told Foster that James had previously slapped her. Foster approached James to talk to him about slapping Parker. James denied Parker's accusation.[1] According to James, while he was talking to Foster on the steps, Parker exited the passenger side

---

[1]When James was asked another time whether he slapped Parker, he responded, "No. Why would I stay at the park when I know she was going to go get her brother and them? That wouldn't make sense."

of the vehicle with her hands behind her back. James told Foster to tell Parker to "get back." James said Foster replied, "Don't worry about my sister. Me and you are talking." It was then James saw that Parker had a gun. James said he put his hands in the air, but that he "didn't touch her."

According to James, Parker was having trouble trying to cock the gun. James stated that Foster told Parker to "pull it back." James stated that when Parker shot the first time, she missed him. James said, at that point, he tried to run away from Parker. When Parker shot a second time, James tripped and fell to the ground. James said that Parker then "ran up on [him]" and, while standing over the top of him, said she was going to kill him. James then tried to get up off the ground. In doing so, he turned his head, at which point Parker shot him.[2] James said if he had not turned his head, he believed he would have died. According to James, Foster then said, "He dead now." James testified that he had not been carrying a weapon that day and that he had never hit, pushed, slapped, or kicked Parker. He also stated that he had never told Parker that he was going to kill her.

Parker also testified about the events of May 6. She explained that Hester was her younger sister and that the two of them were close. Parker said James was the person who had told her that her sister was missing. Parker conceded that she and James had argued over whether James had killed her sister. She stated, "I would see him, and he'd walk in front of the car and stuff, and he flagged me down, and I might cuss -- cuss him a little bit, but." Parker testified that she started "cussing [James]" sometime in 2015, which she believed was the year after her sister had been killed.

---

[2]The bullet entered James' mouth and exited out of the back of his jaw.

Parker stated that on the day of the shooting, she had seen James earlier on Wood Street. Parker said that when she stopped her car, the windows were down, she and James began arguing, and he slapped her through the car window. Parker stated that she was upset James had slapped her.[3]

According to Parker, she encountered James a second time that day when she drove past the park in a friend's car. Parker stated that they stopped in front of the record store, across the street from the park, and that she waited in the car while her friend went to get something out of the trunk. Parker explained that while she was waiting, James passed by the car. When she saw James, she exited the car to talk to him. Parker stated, "And we were fussing. We were really fussing and cussing and saying a whole lot of stuff [about the killing of my sister]." According to Parker, during that conversation, James admitted that he had killed Hester and that he would do the same thing to Parker that he had done to her sister.[4] Parker claimed that James' comments had scared her. Parker explained that she then returned to the car and drove to her mother's home so she could get a gun.

Parker testified that after she got the gun, she went back to the park "[t]o do the same thing [James] said he was going to do to [her]." Parker said that Foster came with her on that occasion.[5]

---

[3]The officer's body-camera recording was admitted into evidence. In it, Parker can be heard stating many times that James had slapped her.

[4]According to Parker, during her second encounter with James, she had a brick, and James had a stick.

[5]Foster testified that while he was visiting at his mother's home, Parker came in the house telling him that there had been an incident with James at the park and that James had slapped her. Foster said he did not see James slap Parker and did not know, for a fact, that he did. Foster said he had never seen James slap Parker or "charge at her." Foster said that when Parker told him James had slapped her, it made him angry. Foster testified that he returned to the park with Parker to give her an opportunity to slap James. According to Foster, if James admitted that he had slapped Parker, but refused to let Parker slap him back, he "was going to beat [James] up."

Foster stated that he did not know Parker was carrying a gun and was not aware that she wanted to shoot James. Foster said that if he had known Parker possessed a gun, he would not have taken her back to the park.

Parker explained that Foster went to speak with James at the top of the steps entering the park. Parker said that while James and Foster were talking, she exited the vehicle and walked toward the steps with the gun in her hand. While walking up the steps, Parker cycled a round in the chamber of the gun. Parker stated, "I was just pulling the thing back and getting ready -- ready to shoot." In order to shoot James, Parker said she had to walk around her brother. Parker said she shot at James three times, explaining,

> The first time I pulled [the trigger], he was about from here to the end of that there -- where the lady is in the pink top in front (indicating).
>
> And then he run down the hill. Then he came up the hill. And then he did this right here (demonstrating), like I had shot him in the back or something, although I didn't.
>
> He fell on the ground coming -- he ran back towards me, and he started rolling on the ground like he -- like he was -- I don't know if he was getting a gun or what, but he rolled on the ground with [his] hands out like this right here (demonstrating). I don't know if he was fixing to shoot me or what he's doing.
>
> And when he's rolling on the ground, he rolled, and then -- he rolled into that -- to that bullet. Like I probably wouldn't even have shot him. When he started rolling, he rolled right into it.

---

According to Foster, when they arrived at the park, James was standing on the steps. Foster said he approached James, and that Parker was probably four or five feet behind him. Foster asked James if he had slapped Parker, to which James responded that he had not.

Foster said that when Parker readied her weapon, he was in between Parker and James, and that he "automatically got out of the way." According to Foster, when James saw that Parker had a gun, he began to run. Foster said, "I was wondering why he was running." Foster testified that, after Parker fired at James a "couple of times," he did not know whether James had been hit or if he had fallen. Foster said, "After he fell, [Parker] got up on him, popped him somewhere close to the head because blood spilled all over herself." According to Foster, Parker wanted to flee the area, but he told her "[Y]ou ain't going nowhere. Put the pistol down before they kill you. When they come out here, just stand by the fence." Foster said that when Parker shot James, they were about four or five feet apart and that Parker was behind James.

As to firing the gun a third time, Parker stated that she shot into the ground and then walked over to the fence, but did not leave the area. Parker testified that when the police arrived, she did not tell them James had threatened to kill her because she did not trust the police department.

When asked what she was thinking when she fired the gun, Parker said that she had been thinking about her sister's death. "I just lost it. I really can't imagine nobody doing nobody like that." Parker explained that she did not want the same thing to happen to her. Parker testified, "[James] can't be trusted. I've seen him pull knives on different people." She continued, "[He] tried to feel on my little girl." She added, "I done chased him for that or whatever." Parker said that on the day of the shooting, she was as scared as she had ever been in her entire life.

According to Parker, she was not a violent person; however, the record shows that in 2007, she pled guilty to, and was convicted of, the offense of deadly conduct, for which she served seventy-five days in jail.[6] Parker also explained that she was arrested in 2016 for two charges of aggravated assault with a deadly weapon and one charge of endangering a child. Parker stated that she was not guilty of any of the charges.

## II. The Jury Charge

At trial, Parker requested a self-defense instruction, which the trial court included in its charge to the jury.[7] Parker contends, however, that the trial court's instruction was incomplete in

---

[6]The indictment against Parker stated that she "[r]ecklessly engage[d] in conduct that placed RASHELLE SPRATLING in imminent danger of seriously bodily injury by ATTEMPTING TO STAB VICTIM."

[7]The State objected to including a self-defense instruction, arguing that Parker presented no evidence that James was in the process of committing the offense of murder. The State maintained, "When [Parker] went out there with the gun, [James] was standing in the park. She approached him with his (sic) brother, she pulled out the gun, and she started firing."

6

that it failed to instruct the jury on the "presumption of reasonableness" as to Parker's alleged belief that the use of deadly force was immediately necessary to protect her life.

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "The purpose of the jury charge . . . 'is to inform the jury of the applicable law and guide them in its application to the case.'" *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977).

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, we determine whether an error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). As here, when a proper objection is made at trial, reversal is required if there is "some harm" "calculated to injure the rights of defendant." *Abdnor*, 871 S.W.3d at 732; *see Almanza*, 686 S.W.2d at 171.

Under Texas law, a person may use deadly force if she reasonably believes such force is immediately necessary to protect herself from the other person's use of deadly force. TEX. PENAL CODE ANN. § 9.32. Parker requested an instruction on self-defense. After a lengthy discussion as to whether a self-defense instruction should be included in the charge, the trial court instructed the jury as follows:

7

Under our law, a person is justified in using force against another when and to the degree that she reasonably believes the force is immediately necessary to protect herself against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if she would be justified in using force against the other in the first place, as set out above, and when she reasonably believes that such deadly force is immediately necessary to prevent the other's imminent commission of murder.

The term "reasonable belief" as used means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

Parker argued at trial, and continues to do so on appeal, that because the trial court included a charge on self-defense, *it was required* to charge the jury on "the presumption of reasonableness." Parker contends that the trial court reversibly erred when it failed to do so. But contrary to Parker's contention,

[t]he Penal Code requires that a presumption that favors the defendant be submitted to the jury [only] "if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact."

*Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011) (quoting TEX. PENAL CODE ANN. § 2.05(b)(1)).

As relevant here, the presumption of reasonableness applied if (1) Parker knew or had reason to believe that James was committing or attempting to commit murder, (2) Parker did not provoke James, and (3) Parker was not involved in criminal activity, other than a Class C misdemeanor in violation of a traffic law or ordinance. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)–(3);[8] *see also Morales*, 357 S.W.3d at 5; *Whitney v. State*, 396 S.W.3d 696, 703 (Tex. App.—Fort

---

[8]Section 9.32(b) of the Texas Penal Code states,

(b)     The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

8

Worth 2013, pet. ref'd). Yet, after hearing the evidence, the trial court determined that there was insufficient evidence to include the presumption in its charge to the jury. We agree.

That said, even assuming, without finding, that the trial court erred when it failed to include the complained-of language in its jury charge, Parker cannot show that she suffered the requisite harm. *See Almanza*, 686 S.W.2d at 171. As this Court has stated before,

> The harm caused by the [alleged] error must be considered 'in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole.

*Kihega v. State*, 392 S.W.3d 828, 835 (Tex. App.—Texarkana 2013, no pet.) (quoting *Almanza*, 686 S.W.2d at 171) (citing TEX. CODE CRIM. PROC. ANN. art 36.19)). Additionally, Parker must have suffered actual harm, not merely theoretical harm. *See Almanza*, 686 S.W.2d at 174.

---

(1) knew or had reason to believe that the person against whom the deadly force was used:

 (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

 (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment, or
 (C) was committing or attempting to commit an offense described in Subsection (a)(2)(B)[, that is, aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery];

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

TEX. PENAL CODE ANN. § 9.32(b).

9

Here, the trial court's instructions contained, among other things, the elements of assault and aggravated assault and the definition of bodily injury, followed by instructions on self-defense. The self-defense charge informed the jury on the general law of self-defense, including when the use of force and deadly force are justified and the meaning of "reasonable belief," and stated that force is not justified in response to verbal provocation alone. After that, the charge stated that even if the jury believed beyond a reasonable doubt from the evidence that Parker "intentionally, or knowingly, or recklessly" caused James' injuries, if it

> further [found] from the evidence, as viewed from the belief of an ordinary and prudent person in the same circumstances as [Parker], it reasonably appeared to [Parker] that deadly force on her part was immediately necessary to prevent Vernon James' imminent commission of murder, then [it] should acquit [Parker] and say by [its] verdict "not guilty."

Thus, the charge correctly instructed the jury on the law of self-defense under Section 9.31[9] of the Texas Penal Code, and included an instruction on the law applying to a defendant's use of deadly force.[10]

---

[9]Section 9.31(a) states, in part, that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a).

[10]Section 9.32(a) states,

> (a)     A person is justified in using deadly force against another:
>
>     (1)     if the actor would be justified in using force against the other under Section 9.31; and
>
>     (2)     when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>
>         (A)     to protect the actor against the other's use or attempted use of unlawful deadly force; or
>
>         (B)     to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Parker complains that the charge did not instruct the jury on the presumption of reasonableness as for her purported belief that the use of deadly force was immediately necessary. Parker does not, however, "take into account that a complete instruction on the presumption of reasonableness would have also informed the jury that, under some circumstances," she would not be entitled to that presumption. *Villarreal v. State*, 453 S.W.3d 429, 435 (Tex. Crim. App. 2015). According to Parker's own testimony, when she returned to the park for her third encounter with James, she was carrying a loaded weapon for the sole purpose of "do[ing] the same thing [James] said he was going to do to [her]." She testified that she walked up the steps toward James while he was speaking to her brother, readied her weapon while she was walking, and then fired at James three times. It would have been difficult, if not impossible, for the jury to have found that Parker did not provoke the altercation, when the uncontroverted evidence showed that she carried a loaded weapon to the park for the premeditated purpose of shooting James. Parker's own testimony supported those facts. Based on the same evidence, it also would have been unlikely that the jury would have found that Parker was not committing a crime. Simply stated, the omission of the language Parker now complains of favored her at trial.

In addition, the evidence that Parker shot James to protect herself was supported only by Parker's own testimony and was controverted by the other witnesses to the shooting. Even so, in reviewing the evidence in a light most favorable to Parker, we must consider that Parker said James slapped her earlier in the day, that she was scared of James, and that he had once threatened to kill her. Parker also stated that she did not know if James was armed during the incident, but that she

---

TEX. PENAL CODE ANN. § 9.32(a).

11

had "seen him pull a knife" on other individuals in the past. Lastly, Parker testified that during her third encounter with James, he came toward her and she "[didn't] know if he was getting a gun or what."

Considering, among other things, that Parker voluntarily placed herself with James three separate times on the day of the shooting and, on one of those occasions, brought a loaded weapon with which she intended to shoot James, her testimony supporting her self-defense claim is suspect, at best. Moreover, the strength of Parker's testimony becomes even less compelling given James' and Foster's testimony that James was running away from Parker when she fired the weapon. Thus, in considering the evidence and plausibility of the evidence supporting Parker's self-defense claim, we conclude that this factor does not weigh in favor of a conclusion that Parker suffered "some harm" because of the trial court's failure to include an instruction on the presumption of reasonableness.

Additionally, in her closing statement, Parker reminded the jury of the reasonableness of her actions by emphasizing her belief that James had murdered Hester and that it was a widely held belief in the community that James was involved in her death. Parker highlighted her testimony that James said he would do the same thing to her that he had done to Hester. She spoke at length about the reasonableness of her use of self-defense during her encounter with James. Over several objections by the State, Parker informed the jury that it was the State's burden to prove beyond a reasonable doubt that her use of self-defense was unnecessary.[11] Parker argued, in part,

---

[11]The trial court overruled the State's objections, and then granted a running objection about similar statements made by Parker.

What do you know in this case? How frightening would it be to have what -- after you've lost a sister you found nude in a field three days after the death in a bad decomposing state to have someone say, I'm going to kill you just like I killed her.

That's not -- her action is not by provocation of verbal provocation. That statement by Vernon James includes the act of murder.

And now [James] wants you to apply it to Parker. . . . I mean, how -- was she to take that? How would you take it?

That was a threat of an imminent commission of a felony called murder. She has the right to defend against that at any point in time because it is imminent to have happened. And she chose this particular day.

They would have you to believe that unless he was trying to kill her that day like he killed her sister, she has no right of self-defense.

Now, how ridiculous of an argument is that? You've got to be almost killed and nude in a field before you have a right to defend yourself.

. . . .

Normally, where you have to be confronted with a danger and react to that danger. This particular self-defense says its an imminent danger. It can occur at any time. As long as you believe that that's true, you have the right to attack in self-defense.

That's what beyond a reasonable doubt -- [the State] must prove that beyond a reasonable doubt that it did not happen. In essence, they need to prove to you that that's not what she thought.

Parker's argument centered on her self-defense theory. Even so, we first note that the relevant law

on justification and the reasonableness of Parker's actions was not entirely absent from the jury

---

The initial burden to produce evidence supporting a claim of self-defense rests with the defendant. *Zulianni*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant presents some evidence, the State then bears the ultimate burden of persuasion to disprove the raised defense. *Id*. The burden of persuasion does not require that the State provide evidence refuting self-defense, but it does require that the State prove its case beyond a reasonable doubt. *Id*. Self-defense is ultimately a fact question for the jury to determine. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). If the jury returns a guilty verdict, then it implicitly finds against the defendant's claim of self-defense. *Id*. at 914.

13

charge.  And while Parker's and the State's arguments were not substitutes for a complete instruction under Section 9.32(b) of the Texas Penal Code, each of their arguments emphasized their primary positions on the issue, that is, whether Parker was justified in exercising deadly force in self-defense, and the reasonableness on her part that deadly force was, in fact, necessary.  Based on this factor, we cannot find that Parker suffered the requisite harm as a result of the trial court's omission of the complained-of language.

We overrule Parker's sole point of error.[12]

## III.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    June 7, 2019
Date Decided:    July 3, 2019

Do Not Publish

---

[12]Maintaining that no evidence supported Parker's claim of self-defense, the State asks us to make a finding that the trial court erred when it included in its jury charge an instruction on self-defense.

The trial court must give a requested jury instruction on every defensive issue raised by the evidence, regardless of the source of the evidence, the strength of the evidence, or the credibility of the evidence.  *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013); *Juarez v. State*, 308 S.W.3d 398, 404–05 (Tex. Crim. App. 2010). A defense is raised by the evidence if there is some evidence on each element of the defense that if believed by the jury, would support a rational inference that the element is true.  *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

As we have discussed, although the evidence supporting Parker's claim of self-defense was far from compelling, there was some evidence, in the form of Parker's own testimony, that she believed James intended to cause her imminent bodily injury.  We therefore decline to grant the State's request and overrule its cross-point of error.

14