**AFFIRMED; Opinion Filed April 2, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-00378-CR**

**RONNIE DEAN DAVIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-1358028-L**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Ronnie Dean Davis of possession with the intent to deliver methamphetamine. In four issues, Davis argues the evidence is insufficient to support his conviction, his sentence is void, the trial court erred by instructing the jury on the law of parties, and the trial court erred by failing to instruct the jury it must resolve any reasonable doubt in favor of a lesser-included offense. We affirm the trial court's judgment.

FACTUAL BACKGROUND

The Dallas Police Department received a citizen's complaint about a house located at 6045 Wofford Drive in Dallas. They decided to perform a "knock-and-talk," which is a consensual encounter between the police and residents of a house during which the officers seek consent to search the home. On July 16, 2013, when the officers executed the knock-and-talk, a woman peeked through one of the glass windows in the door. They knocked again, announced

"Dallas Police Department," and a woman answered the door. Officer Joshua Romero testified the woman, later identified as Monica Day, "seemed real hesitant. She didn't want to open the door. Then finally opened it." Romero introduced himself and explained the citizen's complaint about the house. Day said she lived at the house but was not the homeowner. After the police asked to speak to the homeowner, Day walked away from the door while the officers waited outside. Ronnie Davis then came to the door. Romero explained the police received a complaint about drugs at the house and asked for consent to enter and search the home. Davis denied consent.

While Romero was at the front of the house, two officers were positioned at the back. A woman, later identified as Laci Martinez, attempted to leave from the back of the house, and the officers detained her. She told the officers there were drugs in the house. Based on this information, Romero obtained a search warrant.

Romero entered the house and found "glass pipes that were used to smoke drugs. Along with bongs. Homemade pipes that were on the kitchen table and the coffee table." In one bedroom, the officers found two bottles of testosterone and a baggie with methamphetamine residue. In Day's bedroom they found a mixing bowl with methamphetamine residue.

In a third bedroom, the officers found mail addressed to Davis at the Wofford Drive address, a wooden sign on the wall that said "Ronnie," and male clothing and shoes (the Bedroom). The Bedroom had a very large, carved headboard with a Harley-Davidson motif. Romero testified that inside the Bedroom, the officers found handcuffs, syringes, packaging materials for narcotics, scales, a BB gun under the mattress, and a shot of methamphetamine. In the closet, a large cardboard box "was full of packaging materials. Clear plastic baggie [sic] with [sic] bunch of smaller Ziplock baggies in multiple colors." He explained plastic baggies are used for packaging drugs, and a large quantity of baggies indicates a person is selling drugs.

Further, he noted the baggies were different colors, which dealers use to differentiate the type and quantity of drugs being sold. Likewise, scales like the ones found in the Bedroom are used to measure drugs being put into the baggies. The officers also found methamphetamine residue near a torn plastic baggie in the Bedroom. A shard of methamphetamine was on the Harley-Davidson headboard; a laboratory tested the shard and determined the total weight was 2.75 grams, including adulterants and dilutants.

From the items collected in the house, Romero concluded the residents were using and distributing drugs. However, Romero testified the officers did not find any narcotics on Davis's person.

Laci Martinez testified she was present when the officers arrived on July 16, 2013, because she spent the preceding night at the house. When she saw the police at the door, she went to awaken Davis who was asleep in the Bedroom. When asked which bedroom belonged to Davis, she stated "There is a nice Harley-Davidson headboard, I guess that he made."

The State entered photos into evidence of Davis's tattoos and the door to the Bedroom. Davis's tattoos include multiple images of skulls. Likewise, the Bedroom door was painted and included skull images; no other door in the house was painted. Pictures of the Bedroom show a skeleton head on top of a metal box.

The State played portions of a few telephone calls made by Davis during his incarceration prior to trial. In one call, he stated: "I'm telling the truth; that room aint [sic] mine." In another call, Davis had the following conversation with a woman:

> Davis: Take me a picture of that door too. I want a picture of that door.
> Woman: Of what door?
> Davis: My door. In my room.
> Woman: You want me to print those out so you know what it looks like?
> Davis: No, the door. I'm talking about . . . the side that's painted.

The defense presented testimony from a woman who stated she lived in the house at the time of Davis's arrest. She said the house belonged to Davis's cousin and the room with the Harley-Davidson headboard was the cousin's room; she testified Davis slept in a different room. Davis's ex-wife testified she would take their daughter to the house to visit Davis. Davis did not have a Harley-Davidson headboard in his room; the room with the Harley-Davidson headboard belonged to his roommate.

LAW & ANALYSIS

**1. Sufficiency of the Evidence**

In his first issue, Davis challenges the sufficiency of the evidence showing he was either the primary actor or a party to the offense. Davis concedes he was present when the drugs were found and the drugs were in plain view, but argues the room where the methamphetamine was found was not his room, and there is no evidence linking the drugs to him.

We review a challenge to the sufficiency of the evidence of a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The jury can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is

–4–

sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

To prove unlawful possession of a controlled substance with intent to deliver, the State was required to establish beyond a reasonable doubt that Davis (1) exercised care, custody, control, or management over a controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew the matter possessed was a controlled substance. TEX. HEALTH & SAFETY CODE ANN. §§ 48.102(6), 481.112(a). Whether direct or circumstantial, the evidence must establish that the accused's connection with the controlled substance was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011); *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). Mere presence at a location where drugs are found is insufficient, by itself, to establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Further, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406; *see also Blackman*, 350 S.W.3d at 594–95.

A nonexclusive list of factors that can be sufficient, either alone or in combination, to establish possession of contraband include: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) incriminating statements made by the accused when arrested, (7) an attempt to flee, (8) furtive gestures, (9) an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) whether the accused owned or had the right to possess the

–5–

place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct of the accused indicating a consciousness of guilt, (15) the quantity of the contraband, and (16) the accused's presence in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Wright v. State*, 401 S.W.3d 813, 818–19 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App—Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the sufficiency of the evidence to prove knowing possession. *Evans*, 202 S.W.3d at 162 n.12. However, no set formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of linking factors present is not as important as the logical force they create to prove the crime was committed. *Evans*, 202 S.W.3d at 162; *Taylor*, 106 S.W.3d at 831.

The undisputed evidence shows the police found a shard of crystal methamphetamine on the Harley-Davidson headboard. Romero testified when he initially knocked on the door and asked Day to speak to the homeowner, Day left the door and Davis came to talk to the officers. Davis presented himself to the officers and indicated he had the authority to deny their request to search the house. The evidence shows the officers found mail addressed to Davis, a wooden sign with Davis's first name on it, and male clothing and shoes in the Bedroom. Martinez testified she awakened Davis when the officers arrived and Davis was sleeping in the Bedroom. And when asked which bedroom belonged to Davis, Martinez identified his room by the Harley-Davidson headboard. Further Davis referred to the painted bedroom door as his door, and the evidence showed Davis's tattoos had images similar to those painted on the door to the Bedroom and the decorative skull in the room.

Although the defense presented testimony that the Bedroom belonged to Davis's cousin or roommate and Davis stated on the phone "that room aint [sic] mine," we must defer to the jury because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Winfrey*, 393 S.W.3d at 768. The jury had the ability to believe all, some, or none of the testimony offered to show the Bedroom did not belong to Davis. *See Chambers*, 805 S.W.2d at 461.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have concluded from the State's evidence that the bedroom with the Harley-Davidson headboard belonged to Davis because it had a "Ronnie" plaque on the wall, had mail addressed to Davis, had male clothing, had images on the door and a skull decoration that were similar to Davis's tattoos, and there was testimony the Bedroom belonged to Davis. Further, Davis presented himself as having authority over affairs of the home. Therefore, the jury could have found beyond a reasonable doubt that Davis possessed the drugs and contraband found in the Bedroom and throughout the house. We conclude the evidence is sufficient to support the conviction. *See Jackson*, 443 U.S. at 319. We overrule Davis's first issue.

## 2. Jury Instruction

Davis makes two complaints about the jury charge: (1) the trial court erred by instructing the jury about the law of parties and (2) the trial court erred by failing to instruct the jury about resolving doubt in favor of the lesser-included offense. Our first duty when analyzing a jury-charge issue is to decide whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When the error was not objected to, the error must be "fundamental" and requires reversal "only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'"

*Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Nava*, 415 S.W.3d at 298 (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Nava*, 415 S.W.3d at 298.

### a. Law of Parties

In the jury charge, the trial court included a law of parties instruction stating the jury could find Davis guilty of the charged offense if it found that "Davis, acting alone or as a party," committed the offense. Davis timely objected and the trial court overruled the objection. In his third issue, Davis argues the trial court erred by instructing the jury on the law of parties because there was no evidence Davis was a party to any of the acts of any of the people who were at his house on the day of the events.

Addressing the same issue Davis raises, the court of criminal appeals stated: "Even where proper objection is made at trial, we have held that where, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (en banc) (citing *Black v. State*, 723 S.W.2d 674, 675 & 676 n.2 (Tex. Crim. App. 1986) and *Govan v. State*, 682 S.W.2d 567, 570–571 (Tex. Crim. App. 1985)); *see also Montes v. State*, 724 S.W.2d 54, 56-57 (Tex. Crim. App. 1987) (en banc). The evidence established Davis's guilt as the primary actor.

Even if we were to assume the trial court erred by submitting the parties charge, Davis failed to show harm. *See Cathey*, 992 S.W.2d at 466. We overrule Davis's third issue.

**b.      Reasonable Doubt**

In his fourth issue, Davis asserts the trial court erred by failing to sua sponte instruct the jury that if it had reasonable doubt about whether Davis was guilty of the charged offense or the lesser-included offense, the jury must resolve that doubt in favor of the lesser-included offense. Davis concedes he did not request this instruction or object to its omission from the jury charge; however, he argues, the trial court had a duty to raise the issue sua sponte.

The jury charge states:

> Now, if you find from the evidence beyond a reasonable doubt that on or about July 16, 2013, in Dallas County, Texas, the Defendant, Ronnie Dean Davis, acting alone or as a party, as herein defined did unlawfully and knowingly possess with intent to deliver, a controlled substance, to-wit: methamphetamine, in an amount by aggregate weight, including any adulterants or dilutants, of 1 gram or more but less than 4 grams, then you will find the Defendant guilty of the offense of Possession with Intent to Deliver a Controlled Substance, and so say by your verdict of "guilty."
> If you do not so believe or you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of the lesser included offense of possession of a controlled substance, to-wit: methamphetamine, in an amount by aggregate weight, including any adulterants or dilutants, of 1 gram or more but less than 4 grams.
> Therefore, if you find from the evidence beyond a reasonable doubt that on or about July 16, 2013, in Dallas County, Texas, the Defendant, Ronnie Dean Davis, acting alone or as a party, as herein defined did unlawfully and knowingly possess a controlled substance, to-wit: methamphetamine, in an amount by aggregate weight, including any adulterants or dilutants, of 1 gram or more but less than 4 grams, then you will find the Defendant guilty of the offense of Possession of a Controlled Substance as included in the indictment.
> If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant, and so say by your verdict of "not guilty."

As a general rule, where greater and lesser grades or degrees of an offense are charged, the court must give the jury a "benefit of the doubt" instruction if requested by the defendant. *See Kihega v. State*, 392 S.W.3d 828, 835 (Tex. App.—Texarkana 2013, no pet.); *Benavides v.*

–9–

*State*, 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd); *Villarreal v. State*, No. 05-13-00629-CR, 2014 WL 3056509, at *10 (Tex. App.—Dallas July 7, 2014)(not designated for publication). The instruction is given to assist the jury if it has no reasonable doubt about the defendant's guilt, but is uncertain about the grade or degree of the offense. *Benavides*, 763 S.W.2d at 589 (citing *Richardson v. State*, 108 Tex. Crim. 318, 328, 239 S.W. 218, 224 (1922) (op. on reh'g)); *Villarreal*, 2014 WL 3056509, at *10. Failure to include a "benefit of the doubt" instruction is not harmful to the defendant, however, if the charge as a whole leaves no uncertainty as to how to resolve any doubt. *Shelby v. State*, 724 S.W.2d 138 (Tex. App.—Dallas 1987) (op. on reh'g), *vacated on other grounds*, 761 S.W.2d 5 (Tex. Crim. App. 1988) (per curiam); *Benavides*, 763 S.W.2d at 589; *Villarreal*, 2014 WL 3056509, at *10.

In *Shelby* and *Villarreal*, this Court considered jury charges that included paragraphs very similar to the paragraphs quoted above. *Shelby*, 724 S.W.2d at 139-40; *Villarreal*, 2014 WL 3056509, at *10-11. This Court concluded in both cases that the jury instructions left no uncertainty about how to resolve any doubt regarding which verdict to return if the jury believed the defendants in those cases were guilty but had reasonable doubt as to whether they were guilty of the greater offenses. *Shelby*, 724 S.W.2d at 139-40; *Villarreal*, 2014 WL 3056509, at *11.

In this case, the charge instructs the jury to find Davis guilty of the greater offense if it finds the evidence shows beyond a reasonable doubt that he committed the offense of possession with intent to deliver methamphetamine in the designated quantity. The charge further instructs the jury that if it does not so believe or has reasonable doubt as to the greater offense, it is to find Davis guilty of the lesser-included offense of possession of methamphetamine. As in *Shelby* and *Villarreal*, the jury charge left no uncertainty about how the jury was to resolve any doubt about what verdict to return if the jury believed Davis was guilty, but had doubt as to whether he was guilty of possession with intent to deliver a controlled substance. *See Shelby*, 724 S.W.2d at

139-40; *Villarreal*, 2014 WL 3056509, at *11. No further "benefit of the doubt" instruction was necessary. *See Shelby*, 724 S.W.2d at 140. We conclude any error in not charging the jury on the benefit of the doubt was harmless. *See id.* We overrule Davis's fourth issue.

**3.     Indictment**

Davis complains the State failed to properly amend the indictment and, as a result, his sentence is void. The State alleged two enhancement paragraphs in the indictment:

> And it is further presented to said Court that prior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of POSSESSION OF A CONTROLLED SUBSTANCE/2ND, in the 265TH JUDICIAL DISTRICT COURT of DALLAS County, Texas, in Cause Number F92-43783, on the 23RD day of OCTOBER, 1992,
>
> And that prior to the commission of the offense or offenses for which the defendant was convicted as set out above, the defendant was finally convicted of the felony offense of BURGLARY OF A BUILDING, in the CRIMINAL DISTRICT COURT NO.5 of DALLAS County, Texas, in Cause Number F90-49507, on the 20TH day of MAY, 1991[.]

Prior to trial, the State filed a motion to amend the enhancement paragraphs as follows:

> in line(s) 2 of the first enhancement paragraph regarding #F92-43783, the offense should be listed as Delivery of a Controlled Substance/2d,
> and
> in line(s) 4 of the second enhancement paragraph regarding #F90-49507, the conviction date should be listed as May 2, 1991[.]

The trial court granted the motion, stating: "I'm going to go ahead, grant it now, [defense counsel], so any notice issue, that cures that."

At another pre-trial hearing, a different judge[1] told the lawyers he had a motion to amend the enhancement paragraphs, and he noted the amendments the State previously requested and the initial trial judge previously approved. Unaware the State's motion to amend had been granted, the judge asked the parties whether there was any objection to the modification.

---

[1] The record reflects a visiting judge took over the case after the judge originally assigned to Davis's case granted the State's motion. The visiting judge presided over the trial.

Counsel for Davis stated: "No, Your Honor. Judge McDowell had granted the motion last week." The judge stated his file did not show the motion had been granted and he wanted to make sure Davis's counsel did not have "an issue on that." Defense counsel replied: "No issue."

At the punishment phase of the trial, the State read aloud the enhancements as amended, and Davis pleaded true. After the trial court admonished Davis that by pleading true to the enhancements the punishment range would be increased, the State offered a "Stipulation of Evidence" in which Davis stipulated he had been convicted of the two offenses alleged in the indictment, as amended.

Although Davis complains the indictment was never amended, the allegations in the enhancement paragraphs were not proved, and his sentence is void, Davis failed to preserve this complaint for appeal. *See* TEX. R. APP. P. 33.1. Davis had at least two opportunities to object to the amendments—or the State's alleged failure to properly amend—and did not do so. Instead, Davis's counsel stated he did not object to the modification and had "no issue" with it. Further, Davis pleaded true to the two enhancement paragraphs as amended—without objection—when read aloud by the State. We conclude Davis failed to timely object to the State's failure to file a written amended indictment and he waived this argument. *See* TEX. R. APP. P. 33.1.

Even if Davis had not waived his argument, we would conclude the enhancement paragraphs were not elements of the charged offense and the State was not required to amend the indictment. Davis argues the State was required to amend the indictment and an indictment is not amended when the trial court grants a motion to amend. Rather, he asserts, the indictment must be physically altered or a new official indictment must be entered into the record. Davis relies on article 28.10 of the code of criminal procedure to support his argument. Article 28.10 provides the guidelines for amending an indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10. However, article 28.10 does not apply to the amendment of enhancement allegations in

–12–

the indictment. *Thomas v. State*, 286 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Stautzenberger v. State*, 232 S.W.3d 323, 327 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *Choice v. State*, No. 05-11-00629-CR, 2012 WL 3104676, at *3 (Tex. App.—Dallas July 31, 2012, pet. ref'd) (not designated for publication).

While prior convictions used for enhancement purposes must be raised in some form, they need not be pleaded in the indictment. *Villescas v. State*, 189 S.W.3d 290, 292–93 (Tex. Crim. App. 2006); *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997). Enhancement allegations that are not part of the State's case-in-chief are not part of the "substance" of the indictment. *See Thomas*, 286 S.W.3d at 114 (citing *Stautzenberger*, 232 S.W.3d at 327 ("enhancement allegations are mere surplusage")); *Choice*, 2012 WL 3104676, at *3. The purpose of an enhancement paragraph is to provide the accused with notice of the convictions to be used for enhancement purposes. *Brooks*, 957 S.W.2d at 33. When the State moves to amend the enhancement allegations and the trial court grants the motion, the requisite notice has been provided. *See id.* at 34 ("prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment . . . the requisite notice was conveyed by the State's motion and the trial court's order.").

Although the State was required to give Davis notice of its intent to enhance his punishment, the State was not required to plead enhancement paragraphs in the indictment. The State's motion to amend the enhancement paragraphs, which was granted by the trial court, provided notice to Davis of the prior convictions the State intended to use to enhance his punishment. The State was not required to physically amend the indictment. We overrule Davis's second issue.

CONCLUSION

We affirm the trial court's judgment.

/ Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140378F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RONNIE DEAN DAVIS, Appellant

No. 05-14-00378-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F-1358028-L.
Opinion delivered by Justice Stoddart.
Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of April, 2015.